OPINION
{¶ 1} Defendant-appellant, William Haschenburger (Haschenburger), appeals his ninety-year sentence for multiple counts of rape in the Mahoning County Common Pleas Court upon resentencing after this court remanded pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470. Haschenburger advances two principal arguments: (1) application of the Foster decision to his resentencing violates the ex post facto clause of the United States Constitution and violates his right to due process of law and (2) his maximum consecutive sentences are contrary to the intent and policy underlying S.B. 2.
 {¶ 2} Haschenburger "French kissed" D.M., the victim, when she was just thirteen years old.[1] (Tr. 304-305). Haschenburger was close friends with D.M.'s father, Dennis. (Tr. 303). In fact, D.M. testified that she considered Haschenburger a part of the family. (Tr. 303). Haschenburger was also the uncle of D.M.'s best friend.
 {¶ 3} Shortly after she turned fourteen, other things began happening with Haschenburger. (Tr. 308). It started with digital penetration and then eventually led to vaginal sex, oral sex, and attempted anal sex. (Tr. 309, 311, 324). The majority of these acts occurred in the basement of her home when she was babysitting her little brother.
 {¶ 4} D.M. testified that Haschenburger made her e-mail/instant message him every night. (Tr. 311). Two e-mail messages were admitted into evidence. One is dated July 30, 2000 and it is from D.M. to Haschenburger stating that she loves him. (Exhibit 25). The other one is dated September 21, 2000 from Haschenburger asking D.M. to marry him when she turns eighteen. This e-mail also contains a response from D.M. stating that she loves him and would marry him. (Exhibit 24). These e-mails occurred when she was fourteen years old. (Tr. 321). She testified that she wrote these e-mails and others to Haschenburger because he made her "write him letters about talking of our love." (Tr. 321). She then stated at one point when she was younger she actually started to believe that she loved him. (Tr. 321). *Page 2 
 {¶ 5} D.M. further testified that Haschenburger was possessive and that he had to know where she was at all times. (Tr. 323). She stated that she was always afraid he would get mad and that she had seen him throw tantrums, which included throwing objects. (Tr. 309, 311, 340). When asked why she did not tell her parents about everything that was going on with Haschenburger, she stated:
 {¶ 6} "I was trained to believe it was my fault. And he often threatened to tell my parents. I believe that to be a legitimate threat." (Tr. 325).
 {¶ 7} The sexual activity with Haschenburger occurred until January 2003. One of the last times she had vaginal intercourse with him was in January 2003 after she turned sixteen years old. (Tr. 332). She drove to his house and spent the night. (Tr. 330). She explained that he hid her car in the garage so no one would know she was there. (Tr. 330-331). She also explained that she lied to her parents and told them she was attending a sleep over. (Tr. 330-331). She stated that he was able to coerce her to stay at his house by threatening to tell her parents about them. (Tr. 331).
 {¶ 8} The first time D.M. recounted to someone that she was raped, it was to her then-current boyfriend, John. This occurred between six months to a year after her last encounter with Haschenburger, when she was seventeen. John eventually convinced her that her parents needed to know what happened to her. With her permission, John told her parents about the rapes. This occurred when D.M. was approximately eighteen years old. She then filed a police report, was examined by Dr. Dewar and gave a statement.
 {¶ 9} Haschenburger was indicted on ten counts of rape in violation of R.C. 2901.02(A)(2)(B). The case proceeded to a jury trial. The jury convicted Haschenburger of all counts. He was then sentenced to maximum consecutive sentences for a total sentence of one hundred years. On appeal to this court, Haschenburger raised numerous issues. This court found most of them had no merit, with the exception of two. This court reversed and vacated one of the rape convictions due to insufficient evidence. As for the remaining nine counts of rape *Page 3 
which this court affirmed, this court reversed Haschenburger's sentences and remanded for resentencing pursuant to Foster.
 {¶ 10} Upon remand, the trial court conducted a resentencing hearing on November 2, 2007, and resentenced Haschenburger to maximum consecutive sentences for an aggregate ninety-year term of imprisonment. The judgment entry of sentence was filed November 5, 2007. This appeal followed.
 {¶ 11} Haschenburger's first assignment of error states:
 {¶ 12} "The Trial Court Erred in Sentencing Appellant under a post-Foster application of Ohio Felony Sentencing Law, in Violation of the Ex Post Facto Provisions of the Ohio and United States Constitutions."
 {¶ 13} This court has conclusively determined in State v. Palmer, 7th Dist. No. 06-JE-20, 2007-Ohio-1572, appeal not allowed by115 Ohio St.3d 1410, 2007-Ohio-4884, 873 N.E.2d 1315, that application ofFoster does not violate the ex post facto clause or a defendant's due process of law. Palmer relied on our own precedent as well as on decisions from other Ohio appellate districts, including the Second, Third, Ninth, and Twelfth, all of which had reached similar conclusions. The reasoning is primarily two-fold. First, Ohio appellate courts are inferior in judicial authority to the Ohio Supreme Court. Therefore, they are bound by the Supreme Court's decisions and are not in a position to declare one of their mandates as unconstitutional. Second, criminal defendants are presumed to know that their actions are criminal if so defined by statute and the possible sentence they could face if convicted. The statutory range of punishment a criminal defendant faced before Foster is the same as they face after Foster.
 {¶ 14} Accordingly, Haschenburger's first assignment of error is without merit.
 {¶ 15} Haschenburger's second assignment of error states:
 {¶ 16} "The Trial Court Erred in Sentencing Appellant in a Way That Violated the Intent of the General Assembly When it Enacted the Revised Ohio Felony Sentencing Law in S.B. 2." *Page 4 
 {¶ 17} With the passage of S.B. 2, Haschenburger maintains that the General Assembly intended that minimum concurrent sentences were preferred, except in extraordinary circumstances. Those circumstances included where the offender had previously served a prison term or if the shortest prison term would demean the seriousness of the offender's conduct or not adequately protect the public from future crime by the offender or others. R.C. 2929.14(B). He posits that the Ohio Supreme Court has ignored the original intent of S.B. 2 and effectively legislated from the bench with its decisions in State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110, 715 N.E.2d 131, and State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. In Edmonson, he points out that the Court held that R.C. 2929.14(B) did not require sentencing courts to give reasons why the shortest prison term would demean the seriousness of the offender's conduct or not adequately protect the public from future crime by the offender or others. As forFoster, Haschenburger accepts that the judicial fact-finding provisions of felony sentencing law were unconstitutional, but takes issue with the Court's choice of a remedy. He contends that the Court severed the statutes incorrectly with a result that the General Assembly had not intended. In other words, in his view, the Court judicially legislated away the presumption for minimum concurrent sentences that the General Assembly intended with the passage of S.B. 2. Haschenburger also complains that the General Assembly has "done virtually nothing" in response to the Foster decision.
 {¶ 18} Haschenburger acknowledges this court's inability to overruleFoster. Instead, he maintains that under those provisions of S.B. 2 which remain and are constitutional (i.e., the traditional sentencing factors), the factors mitigate against the maximum consecutive sentences that were imposed in this case. However, he fails to identify any of those factors and explain how or why they are applicable or inapplicable to him.
 {¶ 19} Regardless of the extensive policy arguments advanced by Haschenburger, this court is left only with what remains of Ohio's felony sentencing law and is bound by the Ohio Supreme Court's decisions in that regard. As already *Page 5 
alluded to, prior to the Ohio Supreme Court's decision inFoster, the trial court was required to make certain findings in order to sentence an offender to a non-minimum, maximum term. R.C. 2929.14(B) and (C). However, in Foster, the Court found those provisions unconstitutional because they statutorily required "judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." Id. at paragraph one of the syllabus. As a remedy, Foster severed those provisions in their entirety from the statute. Id. at paragraph two of the syllabus. Now, a sentencing court has "full discretion" to sentence an offender within the statutory range and is no longer required to make findings or give its reasons for imposing non-minimum, maximum, or consecutive sentences. Id. at paragraph seven of the syllabus. A sentencing court need only consider "R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, at ¶ 38.
 {¶ 20} Our review of felony sentences now results in a very limited, two-fold approach, as outlined by the recent plurality opinion of the Ohio State Supreme Court in State v. Kalish, Slip Opinion No. 2008-Ohio-4912, at ¶ 26. The first step requires appellate courts to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. (O'Connor, J., plurality opinion). In examining "all applicable rules and statutes," the sentencing court must consider R.C. 2929.11 and R.C. 2929.12. Id. at ¶ 13-14 (O'Connor, J., plurality opinion). If the sentence is not clearly and convincingly contrary to law, the sentencing court's exercise of discretion "in selecting a sentence within the permissible statutory range is subject to review for any abuse of discretion." Id. at ¶ 17 (O'Connor, J., plurality opinion). Thus, an abuse of discretion is used to determine whether the sentence satisfies R.C. 2929.11 and R.C. 2929.12. Id. at ¶ 17 (O'Connor, J., plurality opinion). *Page 6 
 {¶ 21} In this case, the trial court stated that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors outlined in R.C. 2929.12. Concerning the sentencing factors, the court noted the victim's young age. The court also stated that the victim had suffered psychological harm and that Haschenburger's relationship with the victim had facilitated the offense. Haschenburger does not discuss any of the factors, nor point to any specific evidence in mitigation.
 {¶ 22} In sum, Haschenburger's sentence fell within the statutory range and was not clearly and convincingly contrary to law. Nor did the trial court's application of R.C. 2929.11 and R.C. 2929.12 to Haschenburger's sentence constitute an abuse of discretion.
 {¶ 23} Accordingly, Haschenburger's second assignment of error is without merit.
 {¶ 24} The judgment of the trial court is hereby affirmed.
[1] Portions of the underlying facts and procedural history of this case are taken nearly verbatim from this court's decision dealing with Haschenburger's first, direct appeal in State v. Haschenburger, 7th Dist. No. 05 MA 192, 2007-Ohio-1562.
Waite, J., concurs.
DeGenaro, P.J., concurring with attached concurring opinion.